Filed 3/9/16  Castro v. Los Angeles County Sheriff's Dept. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ERNESTO CASTRO,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>LOS ANGELES COUNTY SHERIFF'S DEPARTMENT et al.,<br><br>Defendants and Respondents. | B262516<br><br>(Los Angeles County<br>Super. Ct. No. BC500939) |

APPEAL from an order of the Superior Court of Los Angeles County, Patrick T. Madden, Judge.  Affirmed.

Layfield & Wallace, Philip J. Layfield for Plaintiff and Appellant.

Hurrell Cantrall, Thomas C. Hurrell, Melinda Cantrall for Defendants and Respondents.

Plaintiff and appellant Ernesto Castro was in a motor vehicle accident with defendant and respondent Larry Walter Reed on the 101 Freeway. Reed's truck struck Castro's car from behind after Castro's car stalled in traffic. Castro brought a negligence action against Reed and Reed's employer, defendant and respondent Los Angeles County Sheriff's Department (LASD). The jury determined defendants were not negligent, and the trial court entered judgment in defendants' favor. The trial court denied Castro's subsequent motion for judgment notwithstanding the verdict. Castro argues the trial court erred in denying his motion, contending he was entitled to a presumption of negligence under the doctrine of res ipsa loquitur and defendants failed to present sufficient evidence at trial to rebut that presumption. Because Castro waived the claims he asserts on appeal by withdrawing his request for the trial court to instruct the jury on res ipsa loquitur, we affirm.

## BACKGROUND

About 10:55 p.m. on August 31, 2012, Castro was driving a 1971 Pontiac Firebird southbound in the far right or number four lane on the 101 Freeway. Reed, who was driving an 18-wheel truck, also was driving southbound in the number four lane on the 101 Freeway. There was a "fair amount of traffic," but it was mostly in the left lanes and flowing well—there was "no real traffic in the right lanes."

Reed was traveling 50 miles per hour, the appropriate speed in light of the traffic conditions. He was not driving too fast for the traffic conditions, and the traffic was "all pretty much" traveling faster than his truck.

As Reed was traveling in the number four lane, an SUV in front of him quickly swerved from the number four lane into the number three lane as if it was trying to go around something. Reed applied the brakes, whereupon the trailer on his truck skidded sideways and started to jackknife. He took his foot off the brakes to control the truck, and immediately regained control. As the SUV swerved, its headlights illuminated Castro's car which Reed saw for the first time. Castro's car was stopped directly in front of Reed's truck in the number four lane. Reed reapplied the brakes to try to avoid hitting

2

Castro's car, but was unsuccessful. His truck hit the back of Castro's car at about 15 to 20 miles per hour.

Reed was unsure how close he was to Castro's car when he first saw it. At his deposition, Reed testified that he was a "good 5- to 600 yards" from Castro's car when he first saw it and started to brake. Reed had not misjudged the degree of force he needed to apply to the brakes to avoid hitting Castro's car. He applied 100 percent of the available brake pressure—his truck had air pressure brakes—when he first saw Castro's car. Although he had not misjudged the degree of force he needed to apply to the brakes, Reed was unable to stop in time to avoid hitting plaintiff's car. He did everything imaginable and possible to stop his truck. There was nothing else he could have done to prevent his truck from running into Castro's car.

Reed's Captain at the LASD signed a report on which he commented that "unsafe speed was the primary causal factor" in the accident. The report also stated the accident was preventable. Although Reed signed the report without expressing disagreement with it, he disagreed with his Captain's conclusion that he was traveling at an unsafe speed. He explained he was traveling under 50 miles per hour and suggested he would have been a hazard to other drivers if he had been driving slower.

Castro testified traffic was heavy on the night of the accident. Traffic had stopped about 25 feet ahead of Castro, and he had applied the brakes. When applying the brakes, Castro "heard the car was having some trouble." His car began to lose power. He thought about pulling from the number four lane to the shoulder, but did not have the opportunity because traffic was too heavy. In addition, when he looked to the right, there was an on-ramp with merging vehicles and not a shoulder. Castro decided the most reasonable course of action was to remain in the lane he was in and coast to a stop. He planned to restart his car when he came to a stop. Castro's car had never previously stalled on the freeway.

Castro's car coasted for about 20 seconds before stopping. Castro realized his car was "clearly disabled long before" it came to a stop. When his car stopped, Castro put it in park and attempted to restart it. Castro had just restarted his car, which had been

3

stopped for about seven seconds, when Reed's truck struck Castro's car. Castro did not believe there was anything else he could have done to avoid the accident.

On cross-examination, defense counsel asked Castro, "[A]s you're traveling down the freeway, after you loss [*sic*] power in your vehicle, nothing prohibited you from parking the car on the shoulder of the road; is that true?" Castro responded, "That is correct."

On a special verdict form, the jury was asked, "Was defendant Larry Reed negligent in operating the motor vehicle owned by defendant Los Angeles County Sheriff's Department." The jury answered the question, "No." The trial court entered judgment in favor of defendants.

Castro filed a motion for judgment notwithstanding the verdict in which he argued there was a rebuttable presumption under the doctrine of res ipsa loquitur that Reed was negligent in striking Castro's car from behind, which presumption defendants failed to rebut with substantial evidence. The trial court denied the motion. Castro appealed from the order denying his motion for judgment notwithstanding the verdict.

## DISCUSSION

Castro contends the doctrine of res ipsa loquitur applied as a matter of law in this case to create a rebuttable presumption that Reed was negligent when Reed's truck struck Castro's stationary vehicle from behind. Castro argues that the burden shifted to defendants to prove the accident was not caused in any part by Reed's negligence and defendants failed to make that showing. Because Castro withdrew his request that the trial court instruct the jury on res ipsa loquitur, Castro waived his claims that Reed was presumed negligent and defendants failed to provide sufficient evidence to rebut that presumption.

### I.     Res Ipsa Loquitur

Under the doctrine of res ipsa loquitur, "certain kinds of accidents are so likely to have been caused by the defendant's negligence that one may fairly say 'the thing speaks

4

for itself.'" (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 825.) The doctrine "is defined by statute as 'a presumption affecting the burden of producing evidence.' (Evid. Code, § 646, subd. (b).) The presumption arises when the evidence satisfies three conditions: '"(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.'" [Citation.] A presumption affecting the burden of producing evidence 'require[s] the trier of fact to assume the existence of the presumed fact' unless the defendant introduces evidence to the contrary. (Evid. Code, § 604; see also *id.*, § 646, subd. (c).) The presumed fact, in this context, is that 'a proximate cause of the occurrence was some negligent conduct on the part of the defendant . . . .' (*Id.*, § 646, subd. (c)(1).) If the defendant introduces 'evidence which would support a finding that he was not negligent or that any negligence on his part was not a proximate cause of the occurrence,' the trier of fact determines whether defendant was negligent without regard to the presumption, simply by weighing the evidence. (*Id.*, § 646, subd. (c); see also *id.*, § 604.)" (*Id.* at pp. 825-826.) The doctrine of res ipsa loquitur may apply in cases in which a vehicle ran into the back of a stationary vehicle. (*Cordova v. Ford* (1966) 246 Cal.App.2d 180, 185.)

Whether the doctrine of res ipsa loquitur applies—i.e., whether the evidence satisfies the three conditions—is a question of fact for the jury. (*Gicking v. Kimberlin* (1985) 170 Cal.App.3d 73, 78 ["The issue of whether a plaintiff has met the three conditions precedent before being entitled to a presumption of negligence is a question of fact for the jury"]; *Levy-Zentner Co. v. Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 777; see Evid. Code, § 646, subd. (c)[1].) The trial court merely

---

[1]    Evidence Code section 646, subdivision (c) provides:
    "If the evidence, or facts otherwise established, would support a res ipsa loquitur presumption and the defendant has introduced evidence which would support a finding that he was not negligent or that any negligence on his part was not a proximate cause of the occurrence, the court may, and upon request shall, instruct the jury to the effect that:

5

determines whether the plaintiff produced substantial evidence to permit the jury to draw the inference that the defendant's negligence was the more likely explanation of the accident. (*Albers v. Greyhound Corp.* (1970) 4 Cal.App.3d 463, 474.)

## II. Waiver

"'A waiver is the relinquishment of a known right. "A waiver may occur (1) by an intentional relinquishment or (2) as 'the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.' [Citation.]"' [Citations.]" (*Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583 [addressing whether, under the facts of the case, the appellant had waived in the trial court issues raised on appeal].)

During a discussion of jury instructions, the trial court said, "I have res ipsa loquitur." Castro's attorney responded, "Withdrawn." Because the question of whether a plaintiff has adduced sufficient evidence at trial to meet the three conditions precedent to be entitled to the res ipsa loquitur presumption of negligence is a jury question (*Gicking v. Kimberlin, supra,* 170 Cal.App.3d at p. 78; *Levy-Zentner Co. v. Southern Pac. Transportation Co., supra,* 74 Cal.App.3d at p. 777; Evid. Code, § 646, subd. (c)), and Castro withdrew his request for a res ipsa loquitur jury instruction, Castro has waived his claims that Reed was presumed negligent and defendants failed to provide sufficient evidence to rebut that presumption. (*Nordstrom Com. Cases, supra,* 186 Cal.App.4th at p. 583.)

---

"(1) If the facts which would give rise to a res ipsa loquitur presumption are found or otherwise established, the jury may draw the inference from such facts that a proximate cause of the occurrence was some negligent conduct on the part of the defendant; and

"(2) The jury shall not find that a proximate cause of the occurrence was some negligent conduct on the part of the defendant unless the jury believes, after weighing all the evidence in the case and drawing such inferences therefrom as the jury believes are warranted, that it is more probable than not that the occurrence was caused by some negligent conduct on the part of the defendant."

In his reply brief, Castro argues that independent of the res ipsa loquitur doctrine substantial evidence does not support the jury's verdict. We decline to address an issue improperly raised for the first time in a reply brief. (*Rose v. Bank of America, N.A.* (2013) 57 Cal.4th 390, 399, fn. 9.)

**DISPOSITION**

The order is affirmed. Defendants are awarded their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KUMAR, J.*

We concur:

TURNER, P. J.

KRIEGLER, J.

---

*     Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.