[No. B090313. Second Dist., Div. Six. June 20, 1996.]

WAYNE BLACKWELL, Plaintiff and Appellant, v.
ROY G. HURST et al., Defendants and Respondents.

## Counsel

Lowthorp, Richards, McMillan, Miller, Conway & Templeman and Glenn J. Campbell for Plaintiff and Appellant.

Snyder & Strozier, Barry Clifford Snyder and Will Tomlinson for Defendants and Respondents.

## Opinion

**STONE (S. J.), P. J.**—Was the refusal of the trial court to give conditional res ipsa loquitur instructions to the jury prejudicial error in this dental malpractice case? We hold it was and reverse the judgment.

Wayne Blackwell appeals from a judgment in favor of respondent Roy G. Hurst, D.D.S., in a wrongful death action brought by Blackwell based on alleged professional negligence. Appellant asserts that the court erroneously refused to give instructions on the doctrine of res ipsa loquitur.

### Facts

October 16, 1992, Marie Blackwell had an appointment with respondent who had been undertaking extensive restorative dental work on her. Several

days earlier, he had cemented 26 crowns in her mouth, most with temporary cement to see how well they fit before permanently cementing them. Mrs. Blackwell, who routinely took several medications, appeared heavily sedated when she came to her appointment for respondent to recement the crown which had come off a tooth. While working on that tooth, respondent noticed that the crown on the adjacent tooth was also loose. As he was removing the crown, he dropped it on her tongue. He attempted to retrieve it but Mrs. Blackwell, who habitually breathed through her mouth, aspirated the crown into her lung. Respondent immediately took her to the hospital for X-rays. Attempts to remove the crown through bronchoscopy were unsuccessful. Eventually, a portion of her lung was surgically removed to extricate the crown. Approximately five months after she aspirated the crown, Mrs. Blackwell died of complications from the medical procedures to retrieve it.

Appellant brought an action for dental negligence and alleged liability under the doctrine of res ipsa loquitur. Plaintiff's expert, Dr. Millikin, testified that dropping objects such as crowns is a common occurrence in dentistry and that aspiration by the patient is a constant risk. He himself had dropped "a dozen things" during his 12 years of practice, probably half of which were crowns. He testified that it was not common to aspirate dental material, "[b]ecause of the precautions we all take. I think it would be much more common if people were not very careful." Dr. Millikin stated that he had no reason to feel respondent was negligent in dropping the object and that respondent's actions after Mrs. Blackwell aspirated the crown were appropriate. Instead, he faulted respondent for not taking reasonable precautions to avoid the patient's aspirating should respondent drop something. "It's the notable absence of any precaution that makes the totality fall below the standard of care." Dr. Millikin opined that respondent could have used a gauze bridge, a rubber dam, or positioned the patient or dental chair to minimize the risk. He could not say that failure to take any particular one of these precautions was negligent in that each patient was unique.

Respondent testified that due to Mrs. Blackwell's many physical and medical problems such as lack of flexibility in her neck and spine, lack of gag reflex, small mouth and being a mouth breather, the protective measures posited by Dr. Millikin were not appropriate. Respondent's expert, Dr. Johnson, testified that respondent's treatment of Mrs. Blackwell and procedures undertaken were appropriate and well above the standard of care. He explained why the precautions testified to by Dr. Millikin would not have been appropriate in this case.

The trial court refused appellant's proffered instructions on res ipsa loquitur and conditional res ipsa loquitur. The court instructed that causation

was not an issue and that the lodged crown caused Mrs. Blackwell's death. The jury returned a 10-to-2 verdict in favor of respondent on the sole count of professional negligence.

## DISCUSSION

█ In reviewing a claim of erroneously refused instructions, we review the evidence most favorable to the applicability of the instructions requested since a party is entitled to have the jury instructed on all theories presented which are supported by the evidence and pleadings. (*Maxwell* v. *Powers* (1994) 22 Cal.App.4th 1596, 1607 [28 Cal.Rptr.2d 62].) █ As the California Supreme Court recently explained, ". . . certain kinds of accidents are so likely to have been caused by the defendant's negligence that one may fairly say 'the thing speaks for itself'" or, in Latin, "res ipsa loquitur." (*Brown* v. *Poway Unified School Dist.* (1993) 4 Cal.4th 820, 825 [15 Cal.Rptr.2d 679, 843 P.2d 624].) The doctrine of res ipsa loquitur, which evolved into a rule to determine whether circumstantial evidence of negligence is sufficient, has been codified as "a presumption affecting the burden of producing evidence." (Evid. Code, § 646, subd. (b).)

For this presumption to arise, three conditions must be satisfied: 1. the accident must be of the kind that ordinarily does not occur absent someone's negligence; 2. the cause or instrumentality must have been within the defendant's exclusive control; and 3. it must not have been due to the plaintiff's voluntary action or contribution. (*Brown* v. *Poway Unified School Dist., supra,* 4 Cal.4th 820, 825-826; *Ybarra* v. *Spangard* (1944) 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258].) When these prerequisites are met, the trier of fact is allowed to assume the existence of the presumed fact unless the defendant introduces evidence to the contrary. (*Brown, supra,* at p. 826; Evid. Code, §§ 604, 646, subd. (c).)

█ Here the only element of res ipsa loquitur in dispute is whether aspiration of a crown ordinarily would not occur without someone's negligence. In determining the applicability of res ipsa loquitur, courts have relied on both expert testimony and common knowledge. (*Gannon* v. *Elliot* (1993) 19 Cal.App.4th 1, 6 [23 Cal.Rptr.2d 86]; *Kerr* v. *Bock* (1971) 5 Cal.3d 321, 324 [95 Cal.Rptr. 788, 486 P.2d 684].) █ The standard of care in a professional negligence case can be proved only by expert testimony unless the conduct required by the particular circumstances is within the common knowledge of the layperson. (*Flowers* v. *Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001 [35 Cal.Rptr.2d 685, 884 P.2d 142]; *Zavala* v. *Board of Trustees* (1993) 16 Cal.App.4th 1755, 1764 [20 Cal.Rptr.2d 768]; *Osborn* v. *Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 273 [7 Cal.Rptr.2d 101].)

The "common knowledge" exception is generally limited to situations in which a layperson can say as a matter of common knowledge " '. . . that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised.' " (*Flowers* v. *Torrance Memorial Hospital Medical Center, supra*, 8 Cal.4th 992, 1001.) (The Supreme Court explained that this rule is a "corollary to the observation 'you don't need a weatherman to know which way the wind blows.' " (*Id.* at p. 1001, fn. 4).) ██ The divergence in testimony on this issue illustrates that steps that a dentist might have taken to prevent aspiration of a dropped object are not matters of common knowledge. (Cf. cases discussed in *Gannon* v. *Elliot, supra*, 19 Cal.App.4th 1, 6-7, in which a foreign object has been left in the patient's body during an operation and which can be presumed negligent based upon common experience.) Even so, a difference of medical opinion concerning the desirability of a particular medical procedure when several are available does not establish that the one used was negligent. (*Clemens* v. *Regents of University of California* (1970) 8 Cal.App.3d 1, 13 [87 Cal.Rptr. 108].)

██ The fact that a particular injury rarely occurs does not in itself justify an inference of negligence unless some other evidence indicates negligence. (*Hale* v. *Venuto* (1982) 137 Cal.App.3d 910, 918-919 [187 Cal.Rptr. 357]; *Clark* v. *Gibbons* (1967) 66 Cal.2d 399, 412-413 [58 Cal.Rptr. 125, 426 P.2d 525].) To justify res ipsa loquitur instructions, appellant must have produced sufficient evidence to permit the jury to make the necessary decision. (*Hale, supra*, at p. 918.) He must have presented "some substantial evidence which, if believed by the jury, would entitle it to draw an inference of negligence from the happening of the accident itself." (*Kerr* v. *Bock, supra*, 5 Cal.3d 321, 324.) ██ He did.

Appellant's expert testified that respondent should have taken some precaution to prevent a dropped object from being aspirated, such as a gauze bridge, a rubber dam, or positioning the patient or dental chair differently. The contradictory evidence presented by respondent does not preclude the jury's drawing the inference of negligence even though the court itself would not draw that inference. Where reasonable persons may differ as to the balance of probabilities, the court must leave the question to the jury. (*Seneris* v. *Haas* (1955) 45 Cal.2d 811, 827 [291 P.2d 915, 53 A.L.R.2d 124].)

Respondent counters that the court does not err in refusing res ipsa loquitur instructions where the facts as to the cause of the accident and the care exercised by the defendant are shown as a matter of law. In such case, there is no justification for resort to the inference of negligence. (*Bedford* v.

*Re* (1973) 9 Cal.3d 593, 600 [108 Cal.Rptr. 364, 510 P.2d 724]; *Keeton* v. *Henning* (1969) 1 Cal.App.3d 50, 54 [81 Cal.Rptr. 424].) Here, respondent argues, the facts surrounding the accident are known and undisputed. Mrs. Blackwell was a mouth breather with diminished or nonexistent gag reflexes. Respondent dropped the crown onto her tongue when he removed it and she aspirated it. The question was simply whether respondent's known conduct met the standard of care, a decision the jury had to make from the conflicting expert testimony.

Nonetheless, evidence of rarity, coupled with some other evidence indicating negligence, may warrant a conditional res ipsa loquitur instruction. (*Hale* v. *Venuto, supra,* 137 Cal.App.3d 910, 919.) This is such a case. Appellant's expert testified that although dropping objects in a patient's mouth is a constant risk, aspiration of the object is a rarity. He gave examples of precautions that could and should have been taken with a known mouth breather who was heavily sedated.

Respondent also argues that since whatever inference of negligence might have been made was strongly rebutted by respondent's evidence, the jury ultimately would have determined whether respondent was negligent without regard to the presumption simply by weighing the evidence. (*Brown* v. *Poway Unified School Dist., supra,* 4 Cal.4th 820, 826.) Consequently, any error in failing to give conditional res ipsa loquitur instructions did not result in a miscarriage of justice. (*Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 580 [34 Cal.Rptr.2d 607, 882 P.2d 298].)

We disagree. *Brown* v. *Poway Unified School Dist.* did not involve a physician-patient relationship, but rather a slip-and-fall case. The court in *Brown* specifically held that slips and falls are not so likely to be the result of negligence as to justify a presumption to that effect. (4 Cal.4th 820, 826.) The *Brown* court acknowledged that a slip and fall ordinarily does not " 'speak for itself.' " (*Id.,* at p. 827.) A slip and fall can occur in the absence of negligence.

By contrast, use of the res ipsa loquitur doctrine is especially suited to a medical or dental malpractice setting in which the unwitting and often unconscious or semiconscious patient is at an evidentiary disadvantage because of his or her inability to demonstrate what occurred in the hospital or surgical room setting.

As opposed to *Brown,* in which the plaintiff was at no evidentiary disadvantage without res ipsa loquitur instructions, here, the patient is unable to testify as to the cause of the injury-producing incident, i.e.,

whether it could have been avoided by use of one of the precautions explained by appellant's expert, and appellant was similarly disadvantaged. The policy rationale for the use of res ipsa loquitur did not extend to the facts in *Brown*. Here it does.

The jury should have been permitted to make a factual finding on the issue of the doctrine of res ipsa loquitur. If the jury determined that, in fact, the injury does not ordinarily occur absent negligence, the doctrine of res ipsa lopuitur would have resulted in an inference of negligence that respondent may or may not have been able to overcome. We cannot hold the error harmless. (*Soule* v. *General Motors Corp.*, *supra*, 8 Cal.4th 548, 580.)

The judgment is reversed. Costs to appellant.

Gilbert, J., and Yegan, J., concurred.